RECEIVED
MAR 31 2004
TERESA L. DEPPNER, CLERK
U.S. District & Bankruptcy Courts
Southern District of West Virginia

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

PENNY KENNEDY, and
RAYMOND KENNEDY, individually
and as guardians and next
friends of
TREVOR KENNEDY, an infant
under the age of eighteen,

      Plaintiffs,

v.                          CIVIL ACTION NO. 2:03-0175

UNITED STATES OF AMERICA;
CHARLESTON AREA MEDICAL CENTER, INC.
dba Women and Children's Hospital of West Virginia
dba Women and Children's Hospital
dba CAMC Children's Hospital
dba Women and Children's Hospital;
INPHYNET HOSPITAL SERVICES, INC.,
a foreign corporation, doing business
in the State of West Virginia; and
GORDON J. GREEN, Dr., individually,

      Defendants.

**MEMORANDUM IN SUPPORT OF**
**UNITED STATES MOTION FOR SUMMARY JUDGMENT**

STATEMENT OF CASE

This action arises pursuant to the terms and conditions of the W. Va. Medical Professional Liability Act ("The Act"), W. Va. Code § 55-7B-1 et seq., as amended, which is applicable to this Federal Tort Claims Act proceeding.  28 U.S.C. §§ 1346(b) and 2671-2680.  Bellomy v. United States, 888 F. Supp. 760, 763-64 (S.D. W.Va. 1995).  In this action plaintiffs allege, generally, that the United States and others were negligent in failing to timely refer Trevor Kennedy to specialists and failing to

diagnose his spinal astrocytoma tumor (Complaint). Trevor Kennedy was an infant at the relevant time periods.

## STATEMENT OF FACTS

Trevor Kennedy was born on April 3, 1998. He became a patient at the Community Health Foundation of Man ("CHF"), which has health care clinics at Man and Gilbert, West Virginia. At the Man, West Virginia, clinic Plaridel Tordilla, M.D., and Physician's Assistant Dale Cook at Man were Trevor's treating pediatrician and Physician's Assistant, respectively.

According to Penny Kennedy, Trevor's mother, he began to have "episodes" of pain during which he would hunch his back, become stiff, and could not bear weight on his legs or walk (P. Kennedy Depo. pp. 5-6, 15-17, Ex. 2).[1] These episodes started on Easter Sunday (P. Kennedy Depo. p. 5). Mrs. Kennedy took her son to CHF the next day, April 25, 2000, where he was examined by Mr. Cook, PA-C (P. Kennedy Depo. p. 51-54). Mr. Cook, together with Dr. Tordilla, diagnosed Trevor with synovitis and asked that he be brought back the next day for x-rays of the hips and legs and routine blood work. The x-rays and blood work were unremarkable and Dr. Tordilla's diagnosis remained synovitis, which he opined would last seven to ten days (P. Kennedy Depo. p. 52). Dr.

---

[1] Ex. 2 to Mrs. Kennedy's deposition are her responses to discovery requests. Ex. "G" of those responses is a time line/diary of events which she prepared. Ex. G is the only portion of Depo. Ex. 2 referred to in this motion.

Tordilla instructed Mrs. Kennedy to give Trevor Motrin to keep him comfortable.

On April 27, 2000, Mrs. Kennedy went to the CHF clinic at Gilbert, West Virginia, to go to lunch with her sister, Jeri Bailey, who was at the time an LPN who worked at CHF-Gilbert with Dr. Rallos, a pediatrician (P. Kennedy Depo. pp. 47-48, 63-68, Ex. 2). Dr. Rallos' Physician's Assistant, Leona Hamrick, was asked by Jeri Bailey to ask Dr. Rallos to order a rheumatoid arthritis[2] blood test for Trevor which he did. The test came back as normal.[3]

According to Mrs. Kennedy, Dr. Tordilla and Mr. Cook were going to refer Trevor to Womens and Childrens Hospital in Charleston if Trevor's condition did not improve (P. Kennedy Depo. pp. 77, 79). Unfortunately, Trevor's "episodes" continued and worsened. On Sunday, April 30, 2000, when CHF was closed, Mrs. Kennedy took Trevor to Womens and Childrens Hospital in Charleston (P. Kennedy Depo. pp. 16-25, Ex. 1, Ex. 2). At Womens and Childrens Hospital Trevor was examined and evaluated in the Emergency Department by Gordon Green, M.D., and staff. According

---

[2] Ms. Hamrick consulted with a pediatrician in Pineville, West Virginia, Eileen Catterson, M.D., who opined that Trevor may have arthritis (P. Kennedy Depo. p. 87-88).

[3] Mrs. Kennedy was advised by Dr. DiBartolomeo, a rheumatologist at West Virginia University, that if rheumatoid arthritis is in its early stages the blood test may not detect it (P. Kennedy Depo. p. 103).

3

to Mrs. Kennedy, Trevor's blood work and x-rays were reported as unremarkable, and Dr. Green agreed with Dr. Tordilla's diagnosis of synovitis and instructed her that if the problem persisted, a referral to an orthopedist would be made (P. Kennedy Depo. p. 24).

Trevor's "episodes" continued and on May 1, 2000, Mrs. Kennedy called Leona Hamrick, the Physician's Assistant for Dr. Rallos at CHF-Gilbert, who obtained a referral for Trevor to see Eric Jones, M.D., a pediatric orthopedist at West Virginia University (P. Kennedy Depo. pp. 28-29, 70-71). The appointment was for May 8, 2000.

Dr. Jones examined Trevor and found no orthopedic problem and referred him to Dr. DiBartolomeo, a rheumatologist, also at West Virginia University (P. Kennedy Depo. pp. 30-31, 71-73). Dr. DiBartolomeo examined Trevor on June 12, 2000, and recommended an eye examination to rule out rheumatoid arthritis (P. Kennedy Depo. pp. 31-33). However, by June 14, 2000, Trevor's condition continued to worsen to the point that he was having difficulty swallowing food and water. Dr. DiBartolomeo was contacted and Trevor was given another appointment for June 20, 2000, during which he was admitted to the hospital due to having one of his "episodes." The admitting physician was James Burns, M.D., a pediatrician (P. Kennedy Depo. pp. 31-33).

4

An MRI was performed on Trevor on June 21, 2000, and was reported the next day as showing a spinal tumor extending from C4 to T3 (Bailes Depo. p. 10). Julian Bailes, M.D., a neurosurgeon, was consulted and surgically removed the tumor on July 6, 2000 (P. Kennedy Depo. Ex. 2). The tumor was an astrocytoma, Grade II, which meant that it contained cancer cells but was not itself cancerous (Bailes Depo. p. 14). According to Dr. Bailes, spinal astrocytomas like Trevor's tumor are exceedingly rare with an incidence of about five for every 10 million children (Bailes Depo. p. 12). According to Dr. Bailes, Trevor's tumor was slow growing and had probably been present most of his life (Bailes Depo. pp. 14, 17, 27). The tumor was six inches in length and had grown so slowly that it had almost completely replaced his entire spinal column from C3 to T4 (Bailes Depo. p. 14).

After his surgery Trevor was left paralyzed from the chest down (P. Kennedy Depo. p. 49). According to Dr. Bailes there is a 50/50 chance that Trevor will have a deformity in his neck due to the tumor's removal which will require a surgical fusion of vertebrae (Bailes Depo. p. 31). The last time Dr. Bailes saw Trevor "he looked terrific" and was "walking"[4] and "playing" (Bailes Depo. p. 29).

---

[4] Trevor walks with crutches or a walker (P. Kennedy Depo. p. 41-43).

5

ARGUMENT

In order to prevail in this action plaintiffs must establish by competent evidence that the United States "acts or omissions increased the risk of harm to the plaintiff and that such increased risk of harm was a substantial factor in bringing about the ultimate injury to the plaintiff[.]" Bellomy v. United States, 888 F. Supp. 760, 766 (S.D. W.Va. 1995)(quoting Syl. Pt. 5, Thornton v. Charleston Area Medical Center, 172 W. Va. 360, 305 S.E.2d 316 (1983); Syl. Pt. 6, Catlett v. MacQueen, 180 W. Va. 6, 375 S.E.2d 184 (1988)(per curium); Syl. Pt. 1, Reager v. Anderson, 179 W. Va. 691, 371 S.E.2d 619 (1988)).

Where an expert or physician is testifying as to the causal relationship between a given physical condition and the defendant's negligent act, the opinion alleged need only be stated in terms of a reasonable degree of medical probability. Syllabus Point 3, Hovermale v. Berkeley Springs Moose Lodge No. 1483, 165 W. Va. 689, 271 S.E.2d 335 (1980).

Notwithstanding the fact that the discovery and treatment of Trevor's tumor has tragically impacted this child and his family, plaintiffs, as a matter of law, cannot establish that the alleged negligence of the United States increased the risk of harm to Trevor Kennedy which increased risk was a substantial factor in his ultimate outcome. Julian Bailes, M.D., Trevor's treating neurosurgeon testified that if Trevor had had surgery to remove

6

his tumor after April 25, 2000 (the first visit to CHF) and prior to May 8, 2000 (first visit with Dr. Jones at West Virginia University) Trevor's surgery, his outcome, and his need for future medical care would have been the same.  Dr. Bailes testified:

> Q  Okay.
>
>    Now, Doctor, if the surgery had been performed -- on his spine had been performed at some point after April 25th of 2000, and prior to May 8, 2000, would the outcome in his case have changed any?
>
> A  Between April?
>
> Q  April 25, 2000, and May 8, 2000.
>
> A  No, it would have been the same.
>
> Q  And if the surgery had been performed any time from May 8th [to] the time that Doctor Jones saw the patient, up until the time the surgery was actually performed, would the outcome have been any different?
>
> A  I don't see how, no.
>
> Q  In terms of his future and medical care, if the surgery had been performed between April the 25th and May the 8th, would the outcome have been any different?
>
> A  No.
>
> Q  In terms of what he needs for the future?
>
> A  In my opinion, no.

> Q   And in terms of his ability to recover and his future functioning, would that have changed at all if the surgery had been performed between April the 25th and May the 8th?
>
> A   Well, again, I mean, this is a tumor that was probably six inches long and slowly growing, so I don't think it would have been appreciably of a different size two or three months before. And the treatment would have been the same and the risk of the treatment would have been the same.
>
> Q   So in other words, from April the 25th, up until the time that you operated on Trevor, this tumor probably did not grow at any significant degree, did it?
>
> A   No, it was probably basically the same size.
>
> MR. WESTFALL:
> I think that's all I have. I'll pass on and try to keep it within the hour.
>
> THE WITNESS:
> Sure.
>
> * * *
>
> BY MS. EIFORT:
> Q   Doctor Bailes, my name is Cheryl Eifort. I represent Charleston Area Medical Center. The opinion that you just gave about the size of the tumor and the outcome, do you render those opinions to a reasonable degree of medical certainty?
>
> A   Yes, I do.

(Bailes Depo. pp. 21-23).

Accordingly, plaintiffs cannot make the necessary causal connection between the alleged negligence of the United States

8

and any increased risk of harm to Trevor which increased risk was a substantial factor in his ultimate outcome. Therefore, the United States is entitled to an order of summary judgment in its favor. Bland v. Norfolk and Southern Railroad Co., Inc., 406 F.2d 863, 866 (4th Cir. 1969)(summary judgment is appropriate in negligence cases; plaintiff is not entitled to a day in court when there is nothing to be tried); Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993)(where no genuine issue of material fact exists there is an affirmative obligation of the trial judge to prevent unsupported claims and defenses from proceeding to trial).

WHEREFORE, the United States prays this court enter summary judgment in its favor on the grounds set forth herein.

Respectfully submitted,

KASEY WARNER
United States Attorney

By: *[signature]*

STEPHEN M. HORN
Assistant United States Attorney
P.O. Box 1713
Charleston, WV 25326
(304) 345-2200

## CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing "UNITED STATES MOTION FOR SUMMARY JUDGMENT" and "MEMORANDUM IN SUPPORT" was made this 31st day of March, 2004, by mailing a true copy properly addressed thereof to the following:

> Scott S. Segal, Esq.
> Samuel A. Hrko, Esq.
> The Segal Law Firm
> 810 Kanawha Blvd, East
> Charleston, WV  25301
>
> Cheryl Eifert, Esquire
> Charleston Area Medical Center
> Office of General Counsel
> 501 Morris Street
> P.O. Box 3669
> Charleston, WV  25336
>
> Karen Tracy McElhinny
> Shuman, McCuskey and Slicer, PLLC
> 1411 Virginia Street, East, Suite 200
> Charleston, WV  25301

_____
STEPHEN M. HORN
Assistant United States Attorney